## HAMILTON DEPOSITORS CORPORATION v. NICHOLAS, Collector of Internal Revenue.

### No. 1978.

Circuit Court of Appeals, Tenth Circuit.

March 28, 1940.

Rehearing Denied May 22, 1940.

George T. Evans, of Denver, Colo., for appellant.

Louise Foster, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and Thomas J. Morrissey, U. S. Atty., and Ivor O. Wingren, Asst. U. S. Atty., both of Denver, Colo., on the brief), for appellee.

Before BRATTON and HUXMAN, Circuit Judges, and MURRAH; District Judge.

HUXMAN, Circuit Judge.

The question presented for consideration is whether the trust herein involved has the essential characteristics of an association and is engaged in carrying on a business for profit and therefore taxable as a corporation within the meaning of the revenue statutes in force. The pertinent statutes involved are: Revenue Act of 1932, Sec. 1111, 47 Stat. 169, 26 U.S.C.A. Int.Rev.Acts, page 656; National Industrial Recovery Act, approved June 16, 1933, Sec. 215, 48 Stat. 195; Revenue Act of 1934, Sec. 701, 801, 48 Stat. 680, 26 U.S.C.A.Int.Rev. Acts, pages 787, 790; Revenue Act of 1935, Sec. 105, 501, 49 Stat. 1014, 26 U.S.C.A. Int.Rev.Acts, pages 798, 811; Revenue Act of 1936, Sec. 401, 1001, 49 Stat. 1648, 26 U.S.C.A.Int.Rev.Acts, pages 943, 971.

The Hamilton Trust, herein called the trust, was created by a written declaration of trust dated July 23, 1931, executed by the Hamilton Depositors Corporation, herein called the corporation, as party of the first part; the Guardian Trust Company of Denver, Colorado, herein called trustee, designated trustee and party of the second part, and such persons as might from time to time purchase trust share certificates, herein called beneficiaries, designated in the declaration of trust as parties of the third part. The Guardian Trust Company remained trustee under this agreement until March 10, 1934. At all times thereafter the International Trust Company, Denver, Colorado, has been and is now the sole and only trustee of the trust.

The trust agreement provides that the corporation will engage in selling trust certificates of the trust and that the proceeds therefrom, less the commission of the corporation, shall be delivered to the trustee. The funds so procured are to be used in purchasing approved stocks and bonds. Each investor or beneficiary receives a trust certificate designating his interest in the trust. The plan of the trust is that the funds realized from the sale of trust certificates will be invested in approved stocks. The trust contemplates that these stocks will from time to time be sold and re-invested and that the income and profit from the operation of the trust will be distributed and paid to the beneficiaries according to the number of units or the interest they have in the trust. The agreement provides that the trustee will from time to time, as directed by the corporation, make these investments; that the trustee is to hold title to all funds, make accounting to the corporation, purchase units with the accumulated funds; that the trustee in its individual capacity may contract with the corporation or any of the companies either with relation to trust shares or otherwise; the trustee has power to take any action deemed advisable in connection with the execution of the trust; no individual liability attaches to the trustee; the trustee may employ agents and attorneys in the execution of the trust; no annual meeting of the beneficiaries is provided for as long as the corporation functions under the declaration of trust; the beneficiaries ordinarily have no voice in the management or operation of the trust; the only time that beneficiaries have a voice in the affairs of the trust is if and when the trust ceases to do business or to perform its function. The voting power of the units resides with the corporation. The corporation agrees to maintain its corporate entity throughout the period of the trust and agrees to maintain an office in Denver. No personal liability attaches to the beneficiaries and the right is afforded to transfer, sell and assign trust certificate or shares in the trust.

The United States Commissioner of Internal Revenue treated the trust as a business association and as such taxable as a corporation under the applicable revenue statutes. The taxes assessed were federal capital stock taxes for the years ending June 30, 1933, 1934, 1935 and 1936. The total amount of taxes assessed for these years was $244.70. The corporation paid these capital stock taxes under protest. Timely claims for refund of the payments were made. The claims for refund were denied, whereupon this action to recover the same was instituted. From a decision in favor of the government, this appeal has been taken.

Each of the applicable revenue acts defined a corporation as "including associations, joint stock companies and insurance companies." In Morrissey et al. v. Commissioner of Int.Rev., 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263, the Supreme Court analyzed the word "associations" as included in the term "corporation" in the applicable revenue statutes. The court distinguished between the traditional trust holding and conserving property with incidental powers in the trustee, and a trust used as a medium for the conducting of a joint business enterprise and a sharing of the gains of the enterprise. The court stated that when certain attributes analogous to those possessed by a corporation are present, the trust is to be regarded as a business association within the term "corporation" as used in the statute, and taxable as such. These attributes were defined by the court as being:

1. A continuing entity throughout the trust period;

2. Centralized management;

3. Continuity of the trust, uninterrupted by death among the beneficial owners;

4. Means for transfer of beneficial interests;

5. Limitation of personal liability of participants to property embarked·in the undertaking.

It was there held that when these elements are present, a trust is to be treated as a corporation and taxed as such within the provisions of the applicable revenue acts. Measured by this yardstick, the trust under consideration clearly falls within the rule announced in the Morrissey case, supra.

Here we have a continuing entity. The trust instrument provides for the appointment of a trustee, and, in the case of vacancy in the office, for the appointment of successors throughout the period of the trust. The corporation also agrees that it will continue and maintain its corporate entity throughout the period of the trust. Here we also have centralized management. The management of the trust is vested in the trustee and in the corporation. The corporation has large supervisory and directory powers over the trustee, directing the trustee in the management, investment and handling of the property. It must also, however, be noted that the trustee has individual powers; that he has duties and functions to perform. He may take any action deemed advisable in connection with the execution of the trust; he must make an accounting to the corporation; he holds the money; he pays out the dividends and earnings; he invests the funds with the advice of the corporation; he may also, in his individual capacity, contract with the corporation or any of the companies, with relation to trust shares or otherwise. The fact ·that management is shared between the trustee and the corporation does not destroy continuity or centralization of management. Such management continues throughout the period of the trust. The trust instrument provides for continuity of existence. The death of any of the beneficiaries does not affect the continuance or the existence of the trust. Neither does there exist any personal liability under the terms of the trust, and the beneficiaries have a right to transfer the beneficial interests upon notice given, in the same manner and to the same extent as is done by corporations.

Lewis & Co. v. Commissioner, 301 U.S. 385, 57 S.Ct. 799, 81 L.Ed. 1174, upon which the corporation relies, is not in point. The Lewis case is a good illustration of the distinction to be kept in mind between the traditional type of trust created for the purpose of holding and conserving particular property with incidental powers, and a trust such as we have here, possessing all the attributes of a corporation and created for the purpose of engaging in business. In the Lewis case the owner of a tract of land executed a declaration of trust, placing the title to the land in the trustee for the benefit of himself and an agent empowered by the settlor to divide and sell the land. The agent was to receive a commission from the sale of the land. The only function of the trustee was to hold the title,

execute contracts and conveyances at the direction of the agent, make collections, pay the agent his commission and the balance to the landlord, the creator of the trust. There was present there no element of corporate control, continuity of existence unaffected by the death of a beneficiary, centralized management, or any of the elements requisite to create an association in the nature of a corporation. The declaration of trust in the instant case meets all the requirements laid down by the Supreme Court in the Morrissey case, supra.

The judgment of the trial court is affirmed.